## WHALEY v. CORONAL INSTITUTE et al.
### No. 7663.

Court of Civil Appeals of Texas. Austin.
March 30, 1932.

Rehearing Denied April 13, 1932.

Edwin G. Moorhead, of Austin, and G. N. Brubaker, of San Marcos, for appellant.

T. C. Johnson, Jr., of San Marcos, for appellees.

BAUGH, J.

Appellant sued the Coronal Institute, a corporation, the city of San Marcos, the Methodist Church of San Marcos, and the State Bank & Trust Company, for principal, interest, and attorneys' fees on 13 bonds for $100 each, issued in 1918 by Coronal Institute, an educational institution, maturing in 1928, alleged to be owned by him; and for foreclosure of a lien on real estate owned by Coronal Institute in 1918, given to secure the payment of said bonds. The case was tried to a jury upon one special issue, in reply to which they found that appellant owned only 9 of such bonds. Whereupon the court rendered judgment for the principal of said nine bonds, with interest thereon up to June 1, 1928, the date of their maturity; but denied appellant further interest or attorneys' fees, and taxed the costs against him; hence this appeal.

Appellant's first contention is that the undisputed evidence shows that he was the owner of 13 of such bonds, all of which had been lost or stolen, and was entitled to an instructed verdict and judgment for the full amount sued for. The issue is thus reduced to the question of whether there was any evidence to sustain the answer of the jury to the issue submitted.

Coronal Institute in 1918 issued 125 bonds, numbered serially, of the par value of $100.00 each, due June 1, 1928, payable to bearer, with 8% interest coupons attached, one coupon due December 1st of each year. Of these only the first 100 were sold. The remaining 25 were held, along with others, including those owned by appellant, for safe-keeping in the vaults of the State Bank & Trust Company at San Marcos. On January 4, 1924, that bank was robbed, and all of these bonds disappeared, and have never been found, nor presented for payment. Appellant testified that he had purchased 1 of these bonds when issued in 1918, from Coronal Institute, 1 from C. C. Wade in March, 1922, 1 from the C. B. Lake estate in February, 1922, 5 from J. T. Curry, in December, 1922, and 5 from W. G. Barber in April, 1923. These purchases were corroborated by the vendors of the bonds and by canceled checks of appellant, showing payment therefor. He also testified that he presented the interest coupons clipped from the 13 bonds owned by him on December 3, 1923, which were then paid and deposited the money in the bank, returning the bonds to the safety vaults of the bank, that being the last time he had seen them. The bank records showed a deposit on December 3d of $104 by appellant, which he testified was payment of the annual interest coupons due December 1st on 13 bonds. He took no receipt from the bank for the bonds, had nothing to show the serial numbers of same, and could not identify any of the bonds by serial number.

The evidence of the appellees showed that prior to the bank robbery 5 of the 125 outstanding bonds had been paid off and surrendered to the Methodist Church, which had taken over the property of the Coronal Institute and assumed their payment; that these 5, together with the 25 retained by it, or 30 in all, were owned by the church, and were kept in the bank at the time of the robbery, none of which had been recovered; that 82 of the canceled bonds were produced upon the trial; that 2 bonds owned by A. M. Ramsey, kept by him in said bank for safe-keeping, disappeared at the time of the robbery and were never found, had been paid to him by the church; that 1 bond owned by J. T. Gillett had been lost by him, and had been paid by the church; and that A. S. Burleson, an original purchaser of one bond in 1918, had same among his papers, still outstanding, and had never been transferred to any one else nor presented for payment. The appellees thus accounted on the trial for 116 of said bonds, leaving only 9 of said issue unaccounted for. The testimony also showed that no records of the ownership of said bonds had been kept so as to identify same by the serial numbers thereof; and that there was no way to determine whether any of the bonds purchased by appellant were among those in the possession of the church at the time of the trial. Appellant testified that he had also owned 3 other bonds than those sued upon, but there is nothing in the record to show when he acquired same nor whether he owned these oth-

er 3 on December 1, 1923, when he claims to have clipped the coupons from the 13 bonds. Some doubt was also raised as to whether the 13 interest coupons presented and paid on December 3, 1923, were all interest coupons for the current year, i. e., whether each interest coupon was clipped from a separate bond, or whether some of them represented accumulated interest for more than one year, thus representing two or more coupons clipped from a single bond. Admitting as a fact, therefore, that appellant had purchased the 13 bonds claimed by him up to April, 1923, in the light of the foregoing evidence the jury could reasonably have concluded that appellant was mistaken as to the number of bonds he owned, and which were lost, at the time of the bank robbery. The appellees having accounted at the time for all but nine of the entire issue, and appellant having failed to show that any of these claimed by him were among those accounted for, we think the evidence was clearly sufficient to go to the jury on the issue as to how many bonds he owned seven years before. The jury having found against him on that issue, we are not authorized to disturb their finding. See Annotation under art. 2190, Vernon's Ann. Stat.; 3 Tex. Jur. 1096, § 768, and cases cited.

■ Appellant next contends that, as to the 9 bonds found by the jury to be owned by him, the court erred in refusing him judgment for interest thereon from June 1, 1928, the date of maturity thereof, to the date of the trial, in taxing the costs against him, and in denying him recovery of attorneys' fees provided for in the bonds.

If appellees had denied liability on said bonds or refused to pay them after they had been properly protected by indemnity against loss, this contention would be correct. The record discloses, however, that in 1925 the Coronal Institute's property and obligations were taken over by the Methodist Church and the property which secured said bonds was sold to the city of San Marcos. That these bonds were all payable to bearer, were negotiable, and both principal and interest payable at the State Bank & Trust Company. That in 1925, and at all times subsequent thereto, there was on deposit in said bank sufficient funds set apart for the express purpose of paying all sums due on said bonds, and the cashier of said bank instructed to pay same on presentment. This fund was available for payment of all outstanding bonds at date of maturity on June 1, 1928, has been so available at all times since, and was so available at the time of the trial. It is not controverted, therefore, that the obligors on said bonds were ready, able, and willing to pay all sums due thereon at all times according to their terms and at the place where same were by their express terms made payable. This constituted a continuing tender by the obligors of full payment thereof according to their terms. Article 5937, § 70, R. S. 1925; Hostutler v. Alldredge (Tex. Civ. App.) 235 S. W. 953; Meyer & Kiser v. French (Tex. Com. App.) 288 S. W. 405. The facts above recited clearly negative any necessity for the employment of attorneys to collect the bonds which the jury found that appellant owned, there being no refusal by the obligors to pay the amount due on that number, provided same were presented, or they were protected by a proper indemnity bond. Such tender also constituted a bar to the recovery of interest and costs. 6 Tex. Jur. 759, § 131; p. 1029, § 331.

■ The next inquiry is whether appellant tendered to appellees a sufficient indemnity bond to justify a refusal of payment by them. We think not. The real issue between the parties appears clearly to have been how many of said bonds appellant owned. The property securing their payment was owned by the city of San Marcos at the time the bonds matured, and the obligations had been assumed by the Methodist Church. These facts were known to appellant and to his attorney. The bonds had been lost before maturity due to no fault of appellees, and there was no proof that they had been destroyed. They were payable to bearer and negotiable. The obligors were consequently not required to pay them unless properly protected by an adequate indemnity bond. Wiedenfeld v. Gallagher (Tex. Civ. App.) 24 S. W. 333; Id. (Tex. Civ. App.) 32 S. W. 248; Kirkpatrick v. San Angelo Nat. Bank (Tex. Civ. App.) 148 S. W. 362; 38 C. J. 267.

In this case appellant submitted to the mayor of San Marcos copy of a proposed indemnity bond some time in May, 1930; and in the same month sent said bond duly signed to the pastor of the Methodist Church. He was then informed by the pastor that he had no authority to accept said bond, but must refer same to the Methodist Conference. This conference did not meet until July of that year. Meantime the indemnity bond was withdrawn. Whether this constituted a sufficient tender of the proposed indemnity bond may seriously be doubted. But we are of the opinion that the bond in question was not sufficient. It was clearly predicated upon ownership by appellant of 13 Coronal Institute bonds; whereas the jury found that appellant owned only 9. Acceptance of the bond, under these conditions, containing such provision, would have been an implied, if not an express, recognition by the obligors that appellant owned 13 bonds for which they were liable, a matter denied by them, and found by the jury in appellees' favor. This bond was payable only to Coronal Institute, whereas the Methodist Church had become the principal obligor on the Coronal Institute bonds, and the city of San Marcos owned the property securing them. And it wholly failed

to identify in any manner any of the Coronal Institute bonds which had been lost or stolen (and there were more than 30) and which it purported to protect said Coronal Institute against having to pay. Since the church and the city, both of which have been sued, were directly interested and would be affected by a payment of said bonds, they should have been protected and made payees in said indemnity bond. Daniel on Neg. Insts. (5th Ed.) par. 1480. This is especially true, since it appears that the Coronal Institute, the only obligee in said bond, had at the time already ceased to function as an educational institution, and there is nothing to show that either of the other appellees could bring suit on their indemnity bond in case they had to pay the outstanding Coronal Institute bonds. See 31 C. J. 428. Under these circumstances, we think the trial court rendered a proper judgment, and it will be affirmed.

Affirmed.